IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN H. WOODEN, a/k/a JABARI MANDELA, | ) |
| Petitioner, | ) |
| v. | ) Case No. 3:12-cv-786 |
| HENRY STEWARD, Warden, Northwest Correctional Complex, | ) Judge Sharp |
| Respondent. | ) |

## MEMORANDUM OPINION

Petitioner John Wooden, a/k/a Jabari Mandela, was convicted and sentenced in the Davidson County Criminal Court in 1982. He is presently incarcerated at the Northwest Correctional Complex in Tiptonville, Tennessee. He instituted this action by filing a petition for habeas corpus relief in this Court under 28 U.S.C. § 2254. Now pending is the respondent's Motion to Dismiss and Alternative Motion to Transfer Successive Petition (ECF No. 26). In response, the petitioner filed a Motion to Deny Respondent's Motion (ECF No. 29). For the reasons set forth herein, the respondent's motion will be granted and the petitioner's motion denied.

### I. THE PRESENT PETITION

Wooden filed his petition under 28 U.S.C. § 2254 on July 27, 2012 (*see* ECF No. 1-1, at 2 (certification of date the petition was placed in prison mail system)). In it, he asserts that the "Tennessee Department of Correction violated the Ex Post Facto Clause of the United States Constitution when it applied Tenn. Code Ann. § 40-35-501(l) retroactively in recalculating his consecutive sentences imposed in his case, thereby postponing his initial sentence custodial parole eligibility hearing and the unauthor[ized] recalculation of all his consecutive sentences denied him a custodial parole hearing for each of his sentences." (ECF No. 1, at 16.)

In addition, although the petitioner complains that TDOC's sentence calculation violated the Ex Post Facto Clause, the main thrust of his argument appears to be his disagreement with TDOC's assessment of the effective date of the petitioner's waiver of his right to have his sentence calculated under the law that was in effect when the crime was committed and agreeing to serve his sentence

under new law. In other words, although the petitioner purports to claim a violation of the *ex post facto* law, in reality, he is arguing that he did not get the benefit of a new law as soon as he was supposed to have done by virtue of his having executed the necessary waiver. This issue involves state law, and does not appear to implicate the petitioner's rights under the United States Constitution.

## II. FACTS AND PROCEDURAL HISTORY

The petitioner has been raising and litigating both these issues over many years. The Tennessee Court of Criminal Appeals summarized the pertinent facts and procedural history of this case as follows:[1]

> Petitioner/Appellant Jabari Issa Mandela a/k/a John H. Wooden ("Petitioner") is an inmate in the custody of Respondent/Appellee TDOC. On June 23, 1982, Petitioner was convicted on four counts of a ten-count indictment. He was sentenced as follows: Count 1—second degree burglary, 6 to 15 years imprisonment (indeterminate); Count 2—aggravated rape (a Class X offense), life imprisonment; Count 4—aggravated assault, 3 to 9 years imprisonment (indeterminate); and Count 10—aggravated sexual battery (a Class X offense), 35 years imprisonment.FN1[2] The criminal court ordered all counts to be served consecutively. The convictions were affirmed on appeal. *See State v. Wooden*, 658 S.W.2d 553 (Tenn. Crim. App. 1983).
>
> When Petitioner was sentenced, he was sentenced under the Class X Felony Act of 1979 for his convictions on Counts 2 and 10. T.C.A. § 39-1-701, *et seq.* (repealed); *see Davis v. Campbell*, 48 S.W.3d 741, 746 (Tenn. Ct. App. 2001). Under that Act, a Class X sentence could not be reduced by good behavior or work incentive credit; in fact, it could not be reduced by any sentence credit of any sort. T.C.A. § 39-1-703(2) (repealed), *cited in Jordan v. Campbell*, No. M1999-00540-COA-R3-CV, 1999 WL 1015581, at *1 (Tenn. Ct. App. Nov. 10, 1999). In 1983, the laws were amended to allow certain Class X prisoners to earn "prisoner performance sentence credits," or PPSC. PPSCs would reduce a prisoner's sentence expiration date, but not his parole eligibility date. *See Taylor v. Campbell*, No. M2001-00479-COA-R3-CV, 2003 WL 22248231, at *4 (Tenn. Ct. App. Oct. 1, 2003); T.C.A. § 41-21-230 (repealed).
>
> In 1985, the laws were again amended. The 1985 amendment established a

---

[1] The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

[2] FN1. The convictions on Count 2 and Count 10 were considered to be "Class X" felonies under the Class X Felonies Act of 1979. T.C.A. § 39–1–701, et seq. (repealed). Although that Act has since been repealed, the "Class X" felony classification remains effective for the Petitioner's sentence in this case. *See Depriest v. State*, No. W2003-02561-CCA-R3-HC, 2004 WL 1872897, at *2 (Tenn. Crim. App. Aug. 20, 2004).

new system that permitted Class X offenders to earn "prisoner sentence reduction credits," or PSRCs.FN2[3] The PRSCs could reduce prisoners' sentence expiration dates as well as their parole eligibility dates. *Taylor*, 2003 WL 22248231, at *4; see T.C.A. § 41-21-236 (2010).

Under the 1985 Act, a person convicted of a Class X crime prior to December 11, 1985 could become eligible for PRSCs under the new statute. To become eligible, the convicted person was required to sign a written waiver, waiving his right to serve his sentence under the law that was in effect when the crime was committed and agreeing to serve his sentence under the new law. T.C.A. § 41-21-236(c)(3).FN3[4] The credits could then be awarded "from and after the date a person becomes eligible under this subsection (c)." *Id.*

Once the 1985 law went into effect, Petitioner in the instant case sent written inquiries to TDOC officials, asking them whether signing the statutory waiver would be beneficial to him. It appears that there was no clear answer to that question. At some point, Petitioner was advised that it would be advantageous for him to sign the waiver to become eligible for the sentence credits for his Class X offenses. Nevertheless, for a period of time, he refused to sign the waiver. Eventually, on April 27, 2005, Petitioner signed the statutory waiver; this made him eligible to earn credits toward his Class X sentences under the 1985 law. TDOC made Petitioner's waiver retroactive to January 10, 1989, based on TDOC's determination that this was the expiration date of Petitioner's sentence on Count 1, and that January 10, 1989 was the earliest date on which Petitioner could have benefitted from the new law. Petitioner disagreed. He thought that the waiver should have been effective as of April 1, 1986, the date on which he claimed the 1985 Act became effective. FN4[5]

In July 2005, Petitioner filed a petition with TDOC for a declaratory order, seeking a contested case hearing on "the issue of whether the sentence management system staff improperly calculated his initial sentence by not certifying his sentence for custodial parole, not continuing to hold his sentences in abeyance as required under prior law and not back dating his waiver [under Section 41-21-236(c)(3)] to begin in April 1986." TDOC denied this petition. It explained to Petitioner that "custodial parole did not apply to indeterminate sentences in a consecutive string." It further told him that "it would have been detrimental to [Petitioner] if you had signed a waiver on your determinate sentences. Indeterminate

---

[3] FN2. The 1985 amendment was included in the Tennessee Comprehensive Correction Improvement Act of 1985.

[4] FN3. That subsection provides:
(3) Any person who committed a felony, including any Class X felony, prior to December 11, 1985, may become eligible for the sentence reduction credits authorized by this section by signing a waiver, in writing, of the right to serve the sentence under the law in effect at the time the crime was committed. However, sentence reduction credits authorized by this section may be awarded only for conduct or performance from and after the date a person becomes eligible under this subsection (c).
T.C.A. § 41-21-236(c)(3).

[5] FN4. The historical notes to the 1985 Act indicate that the statute became effective on December 11, 1985, for the purpose of establishing rules, regulations, and criteria for the awarding, deprivation, removal, and administration of prisoner sentence reduction credits. However, for purposes of actually beginning such prisoner sentence reduction credit program and awarding sentence reduction credits thereunder, this section took effect on March 1, 1986. *See* T.C.A. § 41-21-236 (1985) (historical notes).

sentences have built in good conduct and the signing of a waiver would have extended your [sentence] Expiration Date (EXP)." FN5[6]

In November 2006, Petitioner filed another petition with TDOC for declaratory relief. Petitioner again requested a contested case hearing. The purpose of this contested case hearing was "to determine whether the agency's calculation of his first [sentence] . . . and his string of 'mixed' consecutive sentences . . . had not been correctly calculated, which resulted in each of his sentences being lengthened by not certifying his parole eligibility for each consecutive sentence, a violation of the Ex Post Facto Clause of the State and Federal Constitution and other statutory provisions." TDOC denied Petitioner's November 2006 request, stating that there were no ex post facto issues, and that the claim in his petition was essentially the same as the claim in Petitioner's July 2005 petition for administrative declaratory relief.FN6[7]

On April 15, 2009, Petitioner filed the instant petition for declaratory judgment pursuant to Tennessee Code Annotated § 4-5-225 of the Tennessee Administrative Procedures Act. He claimed that his petition was filed to "challenge the legal validity of [TDOC's] declaratory order refusing to grant a contested case hearing regarding the question of whether [TDOC] failed to correctly calculate his string of consecutive sentences under the State sentence laws at the time the crimes were committed, deferring his parole eligibility date(s) on each sentence without due process of law, requiring him to completely serve the initial sentence without parole board's consideration to determine the commencement of his second consecutive sentence." Petitioner summarized his claim in paragraph 20 of his petition:

> [TDOC] calculated [P]etitioner's initial sentence of six to fifteen (6–15) year term as if it was without the possibility of parole, by not certifying him eligible for custodial parole after he serve[d] the amount of time to reach parole eligibility, which resulted in an increase of each of his individual sentences, and additionally by not certifying him eligible for retroactive custodial parole after he reach[ed] eligibility on each subsequent individual sentence.

He requested a declaratory judgment that TDOC erred in calculating his parole eligibility for each of his sentences in accordance with the laws that existed at the time of the crimes. He also asserted that TDOC erred by not awarding him sentence credits retroactive to April 1986.

On September 14, 2009, TDOC filed a motion for summary judgment. In the motion, TDOC argued that the facts were undisputed, that it had properly calculated Petitioner's release eligibility date for each of his consecutive sentences, and that Petitioner's overall release eligibility date had been determined properly in accordance with Tennessee Code Annotated § 40-35-501(l).FN7[8] In addition,

---

[6] FN5. Neither this administrative petition nor TDOC's denial of the petition is included in the appellate record, but both are referred to in the pleadings and filings with the trial court below.

[7] FN6. As with the July 2005 petition, neither the administrative petition nor TDOC's denial of the petition is included in the appellate record, but both are referred to in the pleadings and filings with the trial court below.

[8] FN7. That subsection provides:
(1) The release eligibility date provided for in this section is separately calculated for each offense for which a defendant is convicted. For consecutive sentences, the periods of ineligibility for release are calculated for each sentence and are added together to determine the release eligibility date for the consecutive sentences.

TDOC argued that Petitioner did "not have any sentence that [made] him eligible for parole," because custodial parole applies only to cases involving consecutive determinate sentences.FN8[9]  *See Howell v. State*, 569 S.W.2d 428, 430 n.1 (Tenn. 1978).  Because Petitioner did not receive a determinate sentence for a non-Class X offense, TDOC argued, he was not eligible for custodial parole.

In support of its motion for summary judgment, TDOC submitted the affidavit of its Director of Sentence Management Services, Candace Whisman ("Whisman"), along with attached documents.  In her affidavit, Whisman explained in detail TDOC's calculation of the release eligibility date ("RED") for all of the Petitioner's sentences.  She stated that Petitioner "received sentences in accordance with the sentence laws that existed at the time the crimes were committed and all sentences are calculated accordingly."  In her calculations, Whisman credited Petitioner with the maximum number of good conduct credits ("GCC") that could potentially have been earned throughout the sentence, despite the fact that Petitioner did not actually earn those credits in advance.  She asserted that Petitioner was "not eligible for custodial parole consideration on any of his sentences," because "he did not receive any determinate sentences."  Whisman's affidavit included a graphic illustration of how she calculated Petitioner's sentence:

*Count 1*

| | |
|---|---|
| Sentence imposed date for count 1 (6 to 15 years) | 6-23-1982 |
| minus pretrial jail credit | 159 days |
| Equals sentence effective date | 1-15-1982 |
| Plus 6 years (minimum sentence on count 1) | + 6 years |
| Equals | 1-15-1988 |
| minus GCC–count | 1–2 yrs 4 mos |
| Equals Regular Parole (RP) date | 9-15-1985 |
| minus 6 months for Probationary Parole (PP) date | 6 months |
| Equals Probationary Parole (PP) date | 3-15-1985 |
| minus 704 days PPSC—count 1 | 704 days |
| Equals final Probationary Parole (PP) date | 4–12–1983 |

*Count 2*

| | |
|---|---|
| Plus 30 years on life sent.—count 2 (Class X) | + 30 yrs |
| Equals Release Eligibility Date (RED) | 4-12-2013 |
| minus 2,004 PSRC—count 2 | 2,004 days |
| Equals final Release Eligibility Date (RED) | 10–17–2007 |

*Count 4*

| | |
|---|---|
| Plus 3 years (minimum sentence on count 4) | + 3 yrs |
| Equals | 10-17-2010 |
| minus GCC—count 4 | 1 yr 1 mo. |
| Equals Regular Parole (RP) date | 9-17-2009 |
| Minus 6 months for Probationary Parole (PP) date | 6 months |
| Equals Probationary Parole (PP) date | 3-17-2009 |

---

T.C.A. § 40–35–501(l) (2010).

[9] FN8.  A determinate sentence is a specific sentence with no minimum or maximum.  All others, except for life sentences, are indeterminate.  *Howell v. State*, 569 S.W.2d 428, 430 n.1 (Tenn. 1978).

| | |
|---|---|
| minus 129 PPSC—count 4 | 129 days |
| Equals final Probationary Parole (PP) date | 11-11-2008 |

*Count 10*

| | |
|---|---|
| Plus 35% of 35 yrs count 10 | + 12 yr. 3 mos. |
| Equals Release Eligibility Date (RED) | 2-11-2021 |
| minus PSRC—Class X count 10 | 36 days |
| Equals current overall Release Eligibility Date (RED) | 1-5-2021 |

On October 30, 2009, Petitioner filed a reply to TDOC's summary judgment motion, and he also filed a cross-motion for summary judgment. In Petitioner's reply/motion, he argued that TDOC's "combining the minimal of his mixed string of consecutive sentences to determine the eligibility date for his parole hearing without specific authorization by a state statute, is illegal." He contended that "the subsequent refusal to certify him eligible for custodial parole hearing as he reach[es] eligibility on each of his separate sentences violated state law." In support of his motion for summary judgment, Petitioner filed his own affidavit. Petitioner's affidavit included, among other things, a sentence credit chart that set out the number of credits he believed should have been credited to him each month from 1982 through August 2009. According to Petitioner, Whisman's calculations omitted 856 prison credits to which he is entitled. Petitioner claimed that his indeterminate sentence for Count 1 should have ended in 1983 rather than on January 10, 1989, and that, therefore, it would have benefitted him for his signed waiver to have been made retroactive to April 1, 1986.

*Mandela v. Tenn. Dep't of Corr.*, 2011 WL 3274155, at *1–*4 (Tenn. Ct. App. July 29, 2011) (footnotes in original).

Meanwhile, after Wooden's second petition to TDOC for declaratory relief (referenced in the opinion above) was denied, but before Wooden sought review of TDOC's decisions by filing suit in Chancery Court in 2009, Wooden filed suit under 42 U.S.C. § 1983 in this Court on March 6, 2007, alleging a violation of his rights under the Due Process and Ex Post Facto Clauses of the United States Constitution based on an alleged miscalculation of his parole eligibility dates. *Mandela v. Stephens*, No. 3:07-cv-0272, 2007 U.S. Dist. LEXIS 48946 (M.D. Tenn. July 6, 2007) (Echols, J.). In that action, which was effectively an attempted appeal of TDOC's denials of his petitions for declaratory relief, Wooden reiterated his claims that the parole dates for his four 1982 felony convictions had been miscalculated. The allegations in that complaint make it clear that his first petition to TDOC for a declaratory order, filed September 2005 (and also referenced in the Tennessee Court of Appeals decision, *supra*), was denied on November 8, 2005. *Mandela v. Stephens*, No. 3:07-cv-0272 (M.D. Tenn. March 6, 2007) (Complaint, ECF No. 1). In his § 1983 complaint, Wooden also referenced the denial of his second petition for a declaratory order, which

was filed in November 2006. Although he does not state when it was denied, it was clearly denied sometime before he filed his § 1983 complaint on March 6, 2007. In the order dismissing the § 1983 complaint for failure to state a claim, the Court expressly informed Wooden that a "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement . . . even though such a claim may come within the literal terms of § 1983." *Mandela*, 2007 U.S. Dist. LEXIS 48946, at *8 (citing *Heck v. Humphrey*, 512 U.S. 477, 481 (1994)). The Court recognized that the plaintiff's claims for damages were cognizable under § 1983, but held that, because "the sentence computation issue is central to the remainder of his claims" and any relief to which the plaintiff might be entitled under § 1983 was "predicated on an affirmative showing that the sentences were, in fact, computed improperly," the plaintiff could not seek such relief until and unless a federal or state court resolved the sentence computation issue in the plaintiff's favor. *Id.* at *9.

## III. DISCUSSION

In his motion to dismiss and supporting memorandum, the respondent argues that (1) Wooden's § 2254 petition is subject to dismissal because it was filed outside the one-year statute of limitations in 28 U.S.C. § 2241(d)(1); and, alternatively, (2) this is a successive petition that should be transferred to the Sixth Circuit Court of Appeals pursuant to 28 U.S.C. § 2244(b)(3). The Court finds, as set forth below, that the present petition does not qualify as a "second or successive" petition but that it was clearly filed outside the applicable statute of limitations and is subject to dismissal on that basis. Further, even if the petition is considered on the merits, Wooden is not entitled to the relief sought.

### A. Second or Successive Petition

Wooden filed his first habeas petition in 1995. That action was dismissed, but without prejudice as to one substantive claim that remained unexhausted. *Mandela v. Myers*, No. 3:95-cv-993 (M.D. Tenn. Sept. 27, 1996 (Docket Entry No. 11)). In 2000, the Sixth Circuit denied the petitioner's application to file a second or successive petition in an unpublished opinion. *In re Mandela*, No. 00-5402 (6th Cir. Aug. 14, 2000). On the basis of these prior filings, and without discussion of the legal basis for his argument, the respondent contends the present petition should be transferred to the Sixth Circuit to be considered as a request for permission to file a second or

successive petition.

The legal basis for the argument is found in 28 U.S.C. § 2244(b)(3)(A), which states: "Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." The phrase "second or successive petition" is not defined in the statute, however, and courts have uniformly rejected a literal reading of it. *James v. Walsh*, 308 F.2d 162, 167 (2d Cir. 2002); *see In re Bowen*, 436 F.3d 699, 704 (6th Cir.2006) (noting that the Supreme Court has made clear that not every numerically second petition is "second or successive" for purposes of § 2244(b), citing *Slack v. McDaniel*, 529 U.S. 473, 487 (2000), and other cases).

Rather, to interpret the term "second or successive," courts look to the pre-AEDPA abuse-of-the-writ doctrine. *In re Bowen*, 436 F.3d at 704 (citing *Stewart v. Martinez-Villareal*, 523 U.S. 637, 643-45 (1998)); *see also Muniz v. United States*, 236 F.3d 122, 127 (2d Cir. 2001) (per curiam) ("We . . . answer the question of whether a petition is second or successive with reference to the equitable principles underlying the abuse of the writ doctrine."). Under the abuse-of-the-writ doctrine, a subsequent petition is "second or successive" when it raises a claim that was, or could have been, raised in an earlier petition. *McCleskey v. Zant*, 499 U.S. 467, 493–95 (1991). Thus, for example, a claim raised in a prior § 2254 petition, but dismissed as premature, is not subject to the gatekeeping provision of § 2244. *See Martinez-Villareal*, 523 U.S. at 643–44.

Based on this case law, it is clear that the claim raised in the present petition should not be considered a "second or successive" petition under § 2244. It does not challenge the petitioner's conviction or sentence, which were topics of his first petition, and generally does not raise questions that were available, or of which the petitioner was aware, in 1995 when he filed his first petition under § 2254. The Court therefore rejects the respondent's contention that Wooden's present petition must be transferred to the Sixth Circuit to be construed as a request for permission to file a second or successive petition.

B.   **Statute of Limitations**

The respondent also argues that the present petition is time-barred by the one-year statute of limitation found at 28 U.S.C. § 2244(d), and that there is no basis for equitable or other tolling of the

statute. The respondent contends that the limitation period began to run with respect to the claims in Wooden's present petition no later than July 6, 2007 and was not subject to any tolling.

The statute of limitations period under AEDPA is one year beginning from the latest of four events. Only two of the four subsections matter to this discussion:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; [or]
>
> . . .
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). In addition, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." *Id.* § 2244(d)(2).

### *(1) Which Provision Governs the Limitations Period in this Action?*

The respondent submits that the statute of limitations in § 2244(d)(1)(D) applies, and that it began to run no later than July 2007, the date on which this Court dismissed Wooden's action under § 1983, which was predicated on the same factual basis as the present habeas petition. Wooden, however, based on the date of his filing, appears to believe that he had one year from the date on which the Tennessee Court of Appeals issued its decision denying his demand for relief on identical grounds to those presented here. That opinion was issued on July 29, 2011. If the limitations period runs from that date, Wooden's petition, filed July 27, 2012, was timely. The first question to be resolved, then, is which statutory provision is controlling in this case.

The Court rejects Wooden's (implied) contention that § 2244(d)(1)(A) applies. Under a plain reading of the statute, the "judgment" to which § 2244(d)(1)(A) makes reference is clearly the same "judgment" referenced in § 2244(d)(1), that is, the judgment pursuant to which the petitioner is "in custody." *See* 28 U.S.C. § 2244(d)(1)(A) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to *the judgment* of a State court. The limitation period shall run from the latest of . . . the date on which *the judgment* became final by the conclusion of direct review or the expiration of the time for seeking such review." (emphasis added)). Wooden is in custody pursuant to a judgment entered by the criminal court for Davidson County,

Tennessee in 1982. That judgment became final ninety days after the Tennessee Supreme Court denied permission to appeal on October 11, 1983, and the time expired for Wooden to file a petition for certiorari. *See Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."). The limitations period defined by § 2244(d)(1)(A) has clearly expired. The Tennessee Court of Appeals' judgment entered July 29, 2011 is *not* the judgment pursuant to which Wooden is in custody in the first place, and the limitations period did not begin running upon entry of that decision.

Moreover, Sixth Circuit case law confirms that habeas petitions premised upon administrative decisions denying parole or calculating eligibility for parole are governed by the limitation period set forth in § 2244(d)(1)(D). In the context of a very similar challenge to the retroactive application of changes in parole eligibility policy on the basis that the changes violated the Ex Post Facto Clause, the Sixth Circuit applied the provision found at 28 U.S.C. § 2244(d)(1)(D), to find the petition before it untimely because it was filed more than a year after "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Alexander v. Birkett*, 228 F. App'x 534, 536 (6th Cir. 2007), *cert. denied*, 552 U.S. 898 (2007). *See also Ali v. Tenn. Bd. of Pardon & Paroles*, 431 F.3d 896, 898 (6th Cir. 2005) ("In the context of a challenge to a parole denial, the one-year period of § 2244(d)(1) appears to start when, under § 2244(d)(1)(D), [the petitioner] could have discovered the "factual predicate of the claim . . . through the exercise of due diligence."). *Cf. Shelby v. Bartlett*, 391 F.3d 1061, 1066 (9th Cir. 2003) (holding that § 2244(d)(1)(D) applies to "habeas petitions that challenge administrative bodies such as parole and disciplinary boards"); *Brown v. Barrow*, 512 F.3d 1304, 1307 & n.1 (11th Cir. 2008) (holding that when a state prisoner challenges the decision of an administrative board or agency, the limitations period begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of diligence," and applying § 2244(d)(1)(D) to a petition challenging the parole board's decision to deny parole).

It is therefore clear to this Court that § 2244(d)(1)(D) applies in this case. The next question to be resolved is whether Wooden's petition is timely under that provision.

### *(2) The Expiration of the Statute of Limitations*

Regardless of whether Wooden may characterize his petition as challenging the Tennessee Court of Appeals' July 29, 2011 decision, in actuality, his petition challenges TDOC's administrative decisions regarding the calculation of his parole eligibility. In that regard, it is apparent that Wooden was aware of the factual predicate for his claims sometime before he filed the administrative declaratory judgment action in 2005, and certainly no later than the filing of the 2006 declaratory judgment action. As set forth above, although the exact date on which TDOC denied the second application for a declaratory order, filed in November 2006, is not in the record, that decision explicitly formed the impetus for Wooden's § 1983 action, which was filed on March 6, 2007 in this Court. For the sake of argument, the Court will presume that TDOC's opinion was filed on March 5, 2007, just before the habeas petition was filed. Even assuming that the statute of limitations was tolled, as a result of Wooden's pursuit of an administrative decision, up until that date, it expired a year later, in March 2008, unless it was tolled.

As set forth above, § 2244 provides that a limitations period is tolled while a "properly filed application for . . . collateral review with respect to the pertinent . . . claim is pending." *Id.* § 2244(d)(2). Even if the Court were to presume that the filing of the § 1983 action in this Court tolled the running of the statute, it started running again when this Court dismissed the action in July 2007.

But Wooden waited nearly two more years, until April 15, 2009, to appeal TDOC's denial of his petitions for administrative relief by instituting an action in the Chancery Court for Davidson County, Tennessee,[10] raising the same *ex post facto* and due process claims raised in his administrative actions, his § 1983 action, and his current habeas petition. Thus, by the time Wooden filed suit in Chancery Court, the statute of limitations for purposes of seeking federal review had already expired.

In sum, it is clear that the limitations period expired, at the very latest—giving Wooden the benefit of every conceivable doubt—in July 2008. The present petition was filed more than one year

---

[10] The Tennessee Court of Appeals made note of the fact that the petition was timely under state law, because a petitioner has ten years from the date of an agency's denial of his administrative petition to bring a petition for declaratory judgment under Tenn. Code Ann. § 4-5-224. *Mandela v. Tenn. Dep't of Corr.*, 2011 WL 3274155, at *5 n.11 (citing *Hughely v. State*, 208 S.W.3d 388, 395 (Tenn. 2006)).

after the date on which the factual predicate of Wooden's claims was or "could have been discovered through the exercise of due diligence," 28 U.S.C. § 2244(d)(1)(D), and is not saved by the tolling provision at § 2244(d)(2).

The one-year statute of limitations in AEDPA, however, is not jurisdictional and also is subject to equitable tolling. *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir.), *cert. denied*, 534 U.S. 1057 (2001). The petitioner bears the burden of showing that he is entitled to equitable tolling, *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003), and the doctrine of equitable tolling is used sparingly and is typically applied "only when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003) (citing *Graham-Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 560–61 (6th Cir. 2000)). *See also Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (assuming without deciding that equitable tolling is available under § 2244(d), and holding that such tolling is warranted only where the petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))). The petitioner here has not acknowledged or addressed the untimely status of his petition, and he has not presented any basis for concluding that equitable tolling applies.

Accordingly, the Court finds that the petition is time-barred and is subject to dismissal on that basis.

  **C.**  **The Merits**

Finally, even if the Court were to assume that the petition was timely on the basis that it seeks review of the Tennessee Court of Appeals' July 2011 decision, it would be subject to dismissal on the merits, as the petitioner fails to establish a violation of the Ex Post Facto Clause and, more importantly for purposes of this Court's review of his petition, fails to show that the Tennessee appellate court's adjudication of the issue "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Ex Post Facto Clause is much more limited in scope than the petitioner appears to believe. As the Sixth Circuit has explained, "[t]he Ex Post Facto Clause prohibits a state from passing a law that (1) criminalizes an action done before the law was passed, which was innocent when done, (2) "'aggravates a crime, or makes it greater than it was, when committed,'" (3) "'changes the punishment'" to inflict greater punishment than the law provided when the crime was committed, or (4) "'alters the legal rules of evidence'" so that less or different testimony is required than at the time the offense was committed." *Hooks v. Sheets*, 603 F.3d 316, 320–21 (6th Cir. 2010) (quoting *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) (quoting *Calder v. Bull*, 3 U.S. 386 (1798))). The relevant inquiry with respect to an *ex post facto* claim is whether an amendment to a particular law "produces a sufficient risk of increase in the measure of punishment attached to the covered crimes." *Garner v. Jones*, 529 U.S. 244, 249–50 (2000); *Shabazz v. Gabry*, 123 F.3d 909, 913 (6th Cir. 1997).

The petitioner here does not claim that the law changed to make the punishment greater than it was at the time he committed the crimes in question. Rather, he appears to be complaining that he did not get the full benefit of subsequent changes in the law that would have made his punishment less severe than at the time he was sentenced. Moreover, to the extent he claims that TDOC's application of Tenn. Code Ann. § 40-35-501(l) violated the Ex Post Facto Clause, he has not shown what the prior law was or how his sentence would have been calculated under the prior law.

The Tennessee Court of Appeals addressed Wooden's *ex post facto* claim, and concluded, based on its interpretation of state law, that the petitioner failed to establish that he had been subjected to any violation of the Ex Post Facto Clause. The court stated in pertinent part as follows:

> Petitioner next argues that the trial court erred in concluding that TDOC correctly calculated the release eligibility date for each of his consecutive sentences. Petitioner claims that TDOC inappropriately sentenced him in accordance with Section 40-35-501(l), because that statute was not yet in effect in 1982 when the underlying crimes were committed. This, he claims, violated the *ex post facto* provisions of both the state and federal constitutions. Petitioner also makes the same argument that he made in the administrative proceedings regarding his sentencing credit waiver, *i.e.*, he claims that the trial court erred in refusing to treat his waiver as though it were effective on April 1, [1986]. Finally, Petitioner argues that the trial court erred in holding that he was not eligible for parole on any of his sentences. He states that there was "an actual increase in punishment by TDOC requiring the appellant to complete his first sentence without parole consideration."
>
> A petitioner seeking to establish an *ex post facto* claim with respect to his sentence must show that a change in the law has adversely affected the petitioner's release date. This Court has recognized that, in order to prevail with an *ex post facto*

> claim, a prisoner must show more than a speculative or attenuated possibility that the new statute, rule, or policy may result in more time in prison. Rather, he must show that the retroactive application of the new statute, rule, or policy either will result in a longer period of incarceration or creates a significant risk of increasing the period of his or her incarceration.
>
> In this case, TDOC applied Section 40-35-501(l) in calculating Petitioner's sentence. That statute provides specifically that an inmate's release eligibility date must be "separately calculated for each offense for which a defendant is convicted." T.C.A. § 40-35-501(l). The statute further provides that, when a defendant receives consecutive sentences, "the periods of ineligibility for release are calculated for each sentence and are added together to determine the release eligibility date for the consecutive sentences ." *Id.*
>
> In our view, the statute is not a change from the manner in which consecutive sentences were calculated under prior law. In this context, the term "consecutive" means that the first sentence is to be completed before the second sentence begins, and so on in succession until all sentences have been consecutively served. The theory of consecutive or cumulative sentencing is that where a criminal defendant has been convicted of two or more offenses, his malefactions may merit separate and cumulative penalties.
>
> Petitioner does not explain how his consecutive sentences would have been calculated differently under preexisting laws. He simply argues that his rights were violated because the statute applied by TDOC became effective after his underlying crime was committed. In Attorney General Opinion 82-345, 1982 WL 177541 (July 2, 1982), issued just after Petitioner was sentenced, Tennessee's Attorney General opines that, under the law in effect at the time, the "aggregation of consecutive indeterminate sentences is proper." Petitioner points us to no contrary authority, and we have found none. Consequently, we must conclude that Petitioner has not carried his burden of proving an *ex post facto* violation.

*Mandela*, 2011 WL 3274155, at *6–*7 (most internal quotation marks and citations omitted).

The Tennessee Court of Appeals resolution of the *ex post facto* claim was not contrary to clearly established federal law, nor did it involve an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d). Its conclusion that Tenn. Code Ann. § 40-35-501(l) did not substantively change the manner in which consecutive sentences are calculated is a question of state law not ordinarily reviewable by this Court, and the fact remains that, even in his present petition, Wooden has not explained how his consecutive sentences would have been calculated differently under preexisting laws. Thus, even if the petition were timely and could be considered on the merits, it is clear that Wooden would not be entitled to relief.

## IV.    CONCLUSION

For the reasons set forth herein, the Court finds that Daniel Wooden's petition under § 2254

is subject to dismissal on the grounds that it is barred by the statute of limitations, 28 U.S.C. § 2244(d)(1)(D), and that it is not saved by the tolling provision in § 2244(d)(2) or by equitable tolling.

The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. The petitioner may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2). A "substantial showing" is made when the petitioner demonstrates that "'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "[A] COA does not require a showing that the appeal will succeed." *Miller-El*, 537 U.S. at 337. Courts should not issue a COA as a matter of course. *Id.*

The petition presented here is barred by the statute of limitations and therefore fails to state any viable basis for federal habeas relief. Even if the petitioner were considered on the merits, the petitioner has failed to show the denial of any constitutional rights and would not be entitled to relief. Because an appeal by the petitioner on any of the issues raised in this petition would not deserve attention, the Court will deny a COA.

An appropriate order is filed herewith.

_____
Kevin H. Sharp
United States District Judge